The next case today is United States v. Angel Miguel Carrasquillo-Sanchez, appeal number 19-2151. Attorney Castro-Lang, please introduce yourself for the record and proceed with your argument. Good morning, Your Honor. Attorney Rafael Castro-Lang, appearing on behalf of appellant. I would request two minutes for rebuttal. Your Honor, if I may, I want to concentrate on the government's incorrect argument that the discovery of a fanny pack that had hidden in five magazines and 128 bullets warranted the extremely high-variance sentence in this case from 24 months to 48 months. This is a case where the court was very specific in delineating the reasons why she was imposing a variance sentence, and in that recitation, which is five pages long, she never mentioned the fanny pack, the magazines, or the additional bullets. It should be noted that count two that the defendant pled guilty to does not mention the magazines, only the 128 bullets. The guideline takes into account a machine gun and the capacity to have a large magazine, so certainly there is more than enough room to understand that the guideline took into account whatever additional magazines may have been found. Significantly, in the stipulation of facts, the plea agreement, nothing is mentioned of the magazines, or for that matter, the 128 bullets. The pre-sentence report, contrary to what the government alleges, specifically stated that it did not find reasons for a downward or a variance sentence, so the pre-sentence report does not support an argument that this high-variance sentence was justified due to the magazines and bullets found in that fanny pack that was closed. In this case, Your Honor, the court, if you read the court's reasoning, she specifically concentrated on a series of violent events where murders occurred, which in this case does not apply at all. Rasquillo has never been arrested. He has never had any background of violence, and if you analyze all of the cases, as I have done in the brief and in the reply, when the court has imposed a variance sentence, maybe considering some ammunition or whatever, it has always tied it to the fact that the defendant has a criminal history that warrants an inference that the possession of the firearm was in fact related to criminal activity that can be seen from his criminal background. That is totally lacking in this case, and I submit to the court that this case is ruled by the president of Rivera de Rios, which in fact is one of my cases. I took that appeal where the court specifically said that judges should not use a conduct that is not relevant conduct to a defendant, and that factors that are already taken in the competition of the guideline, in order for you to justify a Kimbrough, because I understand the logic of the argument you're pressing, and I understand how Rivera de Rios supports it, but there is a question in my mind about if a district court judge is explicit in saying that they view a guideline as being, for policy reasons, too lenient, and makes that clear, doesn't Kimbrough give a district court the discretion to take the view that as a policy matter, they're going to start with a higher range, because the guideline is too lenient, given their understanding of the facts in the world, and if Kimbrough does allow that, what's the problem here? Is there still a problem, and how do we put that together with Rivera de Rios? Of course, I think there is a problem. Kimbrough obviously states that a district court can disagree with the guidelines. The problem is when a judge goes out of her way, as she did in this case, to extensively mention the facts upon which she understands that the variant sentence is justified, and the reasons that are provided by the court for the high variant sentence contradicts presidents of this court that state, no, a first-time offender with no history of violence, you can't justify that by making reference to murders that are totally disassociated to the defendant, and the reasoning of those violent cases cannot be tied to the variant sentence. Mr. Castro, if I could just this may be what you're saying, but I want to at least clear up some confusion that I may have. I thought that what happened in Kimbrough was that the district judge did an analysis in which the conclusion was that the district court judge in that case disagreed with the supported by the empirical data as a national proposition. Do I misunderstand that case, or perhaps I'm not remembering it correctly? I'm not arguing with you. I'm not disputing you. I'm suggesting that if you could tailor your answer in terms of Kimbrough, that would be great. Number one, that the district court judge never mentioned Kimbrough. All she said is that she thought the guideline was insufficient, and then she gave the reasons why she thought the guideline was insufficient by going into all of these community factors of a series of murders occurring with these types of firearms with large magazines. That is what led her to conclude that the variance was justified, so it's not a Kimbrough argument. She specified why, and the reason she gave was one that has been rejected by this court in Rivera-Barrios. Well, counsel, if I could ask you, in Rivera-Barrios, didn't the court seem to note that the court on review, on appellate review, didn't find in the record any aggravating circumstances? Aren't there aggravating circumstances in this record that we could find in reviewing the record? The magazines, the high capacity, the amount of in the pre-sentence investigation report, is it not? Well, the pre-sentence report has two paragraphs that mention that that was found, but the pre-sentence report specifically rejects finding downward departures to a variant sentence. I agree with that. I'm just suggesting that she did read the report. She makes it clear that she read the report and she adopted it, right? And she read the report, and what she said at page nine, she said, the court has reviewed the advisory guideline calculations and finds that the pre-sentence report adequately applied the guideline computation by considering the components of the offense. That statement, with all due respect, I'm not asking about a Kimbrough approach, I'm asking about, she might have articulated more clearly what the aggravating circumstances were that caused her to depart upward, but we on appeal, we look back at the record, can't we find aggravating circumstances in this record? In Rivera Berrios, they mentioned, the court mentioned, well, we looked at the record, we don't see anything that could have been aggravating. Well, your honor, again, I have a problem with the government that has a practice of putting words in a judge's mouth and making arguments that the record does not support, because here, the judge, in fact, she specifically mentioned the 3553 factors she was taking into account, and she never alluded to the magazines and the bullets found in the fanny pack. That's found in page nine of the sentence theory. So, this is not a case where you have general statements made by a judge that you could then somehow try to fashion an inference because she wasn't specific enough. This is a case that was specific, quite specific, and never, never did the judge ever, in fact, what you could conclude is just the contrary, that she did not make reference to that because that was already the high-capacity magazines were a factor already taken into account in the guideline. If she had thought that all of these additional magazines and bullets found in a closed fanny pack justified the step-by-step identifying why she was imposing the variant sentence, and she failed to ever mention that, I believe that the reasonable inference is that she did not consider that as a grounds to impose the variant sentence. Let me ask the court if there are additional questions. I understand your argument based on Rivera Berrios about how her reference to these other incidents in Puerto Rico can't be a basis here because they involve murder and other types of criminal activity. Just setting that aside for the moment, if I were to agree with you that the transcript of the proceedings suggests that the district court was not focused on the amount of and she at one point says specifically, you know, the guidelines treat these automatic weapons offenses too leniently given what's happening in Puerto Rico. I think Chief Judge Howard was asking you, in Kimbrough the claim for the policy deviation from the guidelines was based on an assessment of nationally how the disparity was being, what the evidence showed with respect to disparity nationally. What is your view as to whether the policy deviation that Kimbrough allows can be allowed for a regional variation? So in other words, if a district court was to do a serious inquiry and determine that the state of crime in Puerto Rico is such that the need for deterrence from automatic weapons is so great that the national standard reflected in the guidelines is simply too low to be applied in Puerto Rico. Is that a permissible thing for a district court to do and if not, why not and how does that apply here? Well, your honor, I think that the Kimbrough analysis involved the disparity of crack with cocaine and the disagreement which eventually was found to be justified the disagreement and in fact crack was lowered. But again, you can disagree with the policy but not for the wrong reasons and that's where I find a problem. She may have had a right to say I don't agree with the guideline but if she specifies that she did, why she didn't agree with the guideline and the reasons she gave are reasons that have been rejected by the court's presidents, then I don't think your analysis is valid because otherwise a district court judge could do whatever they want. Thank you, Mr. Castro. We will hear from Mr. Besosa now. You've reserved some time. Yes. If you could mute your audio and video. Thank you. Good morning, your honor. May it please the court. AUSA Francisco Besosa Martinez on behalf of the government. Your honor, the district court imposed a procedurally and substantively reasonable sentence. In imposing its chosen sentence, the district court was not driven by the mere fact that this was a quote-unquote machine gun case. Rather, the sentence addressed the court's core concerns regarding the circumstances surrounding Carraquillo's possession as viewed as viewed in the context of the high machine gun violence in Puerto Rico currently. Specifically, he was carrying a machine gun with a large amount of ammunition while riding in a car in broad daylight with another man that was similarly armed. Now, when explaining its concerns about the dangerousness of this kind of possession, the district court mentioned specific incidents that had been occurring in Puerto Rico during the previous six months. And most of them, many of them, had similar elements as the ones present here. These were individuals who wielded their machine guns while they were riding their cars in broad daylight, pulling over on the side of the road and shooting or drive-by shootings in highly transited roads in Puerto Rico. So there was this concern from the district court that there was a need for not only punishment but also deterrence. As for the district court, I'm disagreeing with the guidelines that the government maintains that this was not… Can I just ask you, here's what the district court says at the key moment after she's gone through her recitation of the facts, in which, at least as I read the recitation that she describes in the preamble to this statement, she does not refer to the magazines or his presence in any particular location. But after describing that, she then says, I don't think that the of this type of weapon and the harm that it's causing in Puerto Rico society. That statement does not sound to me like it's turning on anything more than the possession of this type of weapon, which is an automatic weapon, which may be perfectly fine under Kimbrough, but I find it hard to read into that statement and what came before it the rationale that you're Your Honor, the district court's explanation for the sentence may not be extreme in its specificity. Yeah, that's not… I know that. No, what I'm saying to you is it was specific. I just read you the quote. So, if I was of the view that the only way to read the transcript here, and, you know, maybe this is the wrong way to read it, but if I were of the view that the way to read this transcript is to take seriously exactly what she said, which makes no reference to the factors you're identifying, and then says the guidelines do not reflect the seriousness of the possession of this type of weapon and the harm that is causing to Puerto Rico society, is there a way under Rivera Berrios that that rationale can be affirmed, if that's the logic of the reason for the sentence? Yes, Your Honor. In Rivera Berrios, a panel of this court determined that the district court in that case was merely punishing the general dangerousness of machine guns, whereas here the court was much more specific. I don't know. If I disagree with you that the record supports the idea that she was focused on a specific way in which he was carrying it, the amount of ammunition he had, and where he was located, and I took seriously the statement here that the district court thought that the guidelines do not reflect the seriousness of the possession of the type of weapon, in other words, the rationale was based simply on a disagreement with the guidelines view of how serious automatic possession of automatic weapons are, is, can that be squared with the Rivera Berrios? Just to clarify, Your Honor, your question is whether if the district court's sole consideration in Upward Variance was the machine gun, whether this can be squared with the Rivera Berrios case? Correct. Well, Your Honor, I disagree that the district court solely considered the machine gun in this case. However, there are distinctions between this case and Rivera Berrios. For instance, as Judge McAuliffe was mentioning, a review of the record in this case, contrary to Rivera Berrios, showed that there were much more aggravating factors. I have just one last question. Assuming there is this conflict between Rivera Berrios and this case, given at least one possible way of reading the transcript of what the district court's rationale was, what is the government's view in light of Kimbrough as to the authority of a district court to disagree with the guidelines on policy grounds about the seriousness of this offense in consequence of the general problem with crime involving automatic weapons in Puerto Rico? Your Honor, I believe Kimbrough and under Kimbrough and Gall, the district courts have a great reference, deference, are owed a great deal of deference in their consideration of the guidelines and how they should be applied in the case-specific facts of their jurisdiction. They have a much better vantage point than a court of appeals to understand the nuances at a regional level, similar to the case in Caveira from the Second Circuit, where the district court explained that the guidelines did not adequately address the firearm violence in New York at that time, and based on that alone, the Second Circuit affirmed. That is a very similar case here, and I would also point out to this court's... I guess I did have one follow-up to that. If we follow that logic, what guides the district court's discretion when it decides to make such a deviation, and then how is a court of appeals supposed to review that? So my concern is if we allow the deviation, so a district court says maybe that's a good guideline sentencing range nationally, but given the crime problem in Puerto Rico, it's way too lenient. Shouldn't the district court have to identify what its new benchmark is? Because here, what concerns me is the district court just then moves to the final sentencing number, but it never identifies what it's treating as the range that it's going to use as a benchmark for this particular case with all the individualized consideration. Normally, the way the guidelines work is you set a range, then you look at the individual case with reference to the range. Here, if you're going to deviate from the guidelines, you're going to set a new range, but you never articulate what the new range is. There's no benchmark for the individualized consideration. That seems to me to invite a lot of arbitrariness. I don't believe the district court in this case or in other cases is using another unknown guideline range as a starting point. The starting point is the guideline range as calculated in this case, 24 to 30 months. The court's determination was that based on the facts of this case, that is simply not enough, and it imposed an upward variance. That was based on community-based factors, so it would apply in every case, presumably. Presumably. Well, they are present. Sure, Your Honor, yes. Yes, so that means she's going to give 48 months in every single case? Not necessarily, Your Honors. What's the benchmark she's going to use in every other case if it's not the benchmark in the guidelines? You can't tell from the face of the opinion. That seems to me concerning. Our problem really is, you know, how do we review this? Your Honor, I would, like I said, the district court's starting point was this 24 to 30 month guideline range. Its deviation based on its policy disagreement does not mean that it changed the benchmark across the board. There may be other cases where, for instance, a defendant, as opposed to Carrasquillo, may have mitigating circumstances that, for his particular sentencing judge, may compel him to, notwithstanding the fact that it may have been a machine gun, this particular defendant still deserves a guideline sentence. That's just a hypothetical example. What I'm trying to say is that sentencing is a very case-specific matter. And just because the district court says that it disagrees with the guidelines for machine guns does not mean that moving forward, every single defendant who's found with a machine gun will get an upward variance. This is very case-specific, like I said. There are a number of factors that go into sentencing, mitigating, aggravating, and so on. Well, is it just machine guns? It's not machine guns as machine guns and she thinks the guidelines are too lenient. It's machine guns in the context of the community circumstances at issue presently when she sentences, right? Exactly, Your Honor. Like I said, when she explained her concerns, she detailed, I believe, seven or eight instances just in the past previous six months. Well, my point is that's sort of a moving target. It's always going to be in flux one way or the other in terms of the community standards. I don't mean to digress, sorry, but under Rivera Berrios, didn't the court make it, I thought, rather clear that the problem there was that there was only a reference to machine gun as machine gun and there was nothing else in the record that even on appeal, the Court of Appeals couldn't look at the record and say, well, we see other aggravating circumstances that would warrant a deviation upward in that case, whereas is this case different? Yes, Your Honor, this case is different. Like I was mentioning, in Rivera Berrios, for instance, the court found that the amount of ammunition in that case, I believe it was 37 rounds, was consistent with a case of mere possession of machine gun. Here, however, the record it was... Well, I think we understand the differences, but let me ask you this. At some point, does the judge have to make it clear that that's part of the calculus? Certainly, it would be preferable for the district court to make it clearer, but whether it's necessary in a case like this where it is clear from a review of the record for purposes of appeal and affirmance, this court may do so based on its own review of the record. Well, can I ask you on that score, what do you make of this paragraph in the transcript from the sentencing judge? Lastly, the court takes into consideration the elements of the participation in the same. The sentencing judge then recounts various facts without mentioning the 128 rounds and then says this, direct quote, the weapon had attached to the same, a large magazine with a capacity for 31 rounds and was loaded with 28 rounds, given, and the defendant admitted that on a daily basis, he may smoke three marijuana cigarettes per day. So rather than simply being silent on the amount and rather than making a reference to the larger amount, the district court specifically identifies the lower amount of 31 rounds, which is around roughly comparable to Rivera-Barrios. That seems pretty hard to say. Well, nonetheless, because there's a record evidence of more rounds, the district court must have been relying on the more rounds. Your Honor, in that instance, we can see that the district court was reciting the facts as they were laid out in the playroom, meaning those were the base facts that were necessary to meet the elements of the offense. However, when we review the court, the transcript, the district court also said that the pre-sentence investigation report, the judgment, its sentence included a forfeiture, which mentioned the 100 plus rounds of ammunition, and the indictment itself said that Carrasquillo was in possession of a firearm that was loaded with 29 rounds of ammunition and a total of over 100 rounds of ammunition. So the indictment, his count of conviction itself makes reference to this 100 plus rounds of ammunition. Thank you, Mr. Basosa. Any more questions from the court of Mr. Basosa? All right, if you wouldn't mind muting your audio and video, we'll hear from Mr. Castro-Lang again. Thank you very much, Your Honors. Good morning, Your Honor. Attorney Rafael Castro-Lang, court appointed on behalf of appellant. There are several matters here that really need to be disputed. The argument that the court's citation of incidents was similar to Carrasquillo's is totally incorrect. Like I've analyzed all of the cases cited by the court, there was a history of criminality on behalf of the defendant that warranted an inference that his possession of the firearm was because he was engaged in other criminal activities such as drug trafficking, committing murders. That is not the case here. In fact, you know, the issue of machine guns has two faces. This is the defendant that had never been arrested, had no prior history of convictions, and he said, I bought the gun for self-protection. The issue of the high incidence of criminality has a second face, that people that live in places of high incidence of criminality have a fear of becoming a victim of crimes. And here, the record reflects that there were some people from Loiza that were having a war with some people where he lived but did not include him, and that he bought the firearm three days before for self-protection. That takes this case, that was never disputed. Those are facts that appear in the precedence report that have never been disputed. And so how is it possible to say, I'm going to treat you like a violent murderer that has a history, an extensive history of criminal activity because you purchased a firearm in full mode because you were fearful precisely of the problem of community violence? Anything else, Mr. Castro? Any other points? No, Your Honor, that would be it. Okay, thank you very much. Thank you both. Thank you. That concludes argument in this case. Attorney Castro Lange and Attorney Basoso, you should disconnect from the hearing at this time.